1
2
3
4
5              **UNITED STATES DISTRICT COURT**
6
7          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
8

| | |
|---|---|
| YVONNE ARCURE, KEVIN COOK, & JOSEPH FESSENDEN, | 1:13-cv-00541-LJO-BAM |
| Plaintiffs, | **ORDER ON MOTIONS TO DISMISS AND MOTION TO SEVER** (Docs. 56, 66, 68, 70, 72) |
| v. | |
| CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES, DEBORAH MEEKER, JEFFREY BRADLEY, SCOTT GARDNER, DOUGLAS LOEHNER, DAVID CORRAL, & MICHAEL FLORES. | |
| Defendants. | |

### I.    PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

1

## II.    INTRODUCTION

Plaintiffs Yvonne Arcure, Kevin Cook, and Joseph Fessenden (collectively, "Plaintiffs") allege sex discrimination, retaliation, and whistleblower claims against defendants California Department of Developmental services ("DDS") and six of its employees, Deborah Meeker, Jeffrey Bradley, Scott Gardner, Douglas Loehner, David Corral, and Michael Flores.  Pending before the Court are Defendants DDS, Meeker, and Corral's (collectively, "Defendants") motion to dismiss the individual defendants for untimely service pursuant to Fed. R. Civ. P. 4(m), motion to dismiss the tenth cause of action under California's Whistleblower Protection Act ("WPA"), Cal. Lab. Code § 1102.5(a), for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), motion to sever the tenth cause of action under Fed. R. Civ. P. 21, and motions to dismiss the tenth cause of action against Meeker and the fourth cause of action under California's Fair Housing and Employment Act ("FEHA"), Cal. Gov. Code § 12940(j), against Corral for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, this Court DENIES Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 4(m), DENIES Defendants' motion to dismiss the tenth cause of action under Rule 12(b)(1), DENIES Defendants' motion to sever the tenth cause of action under Rule 21, GRANTS Defendants' motion to dismiss the tenth cause of action against Meeker under Rule 12(b)(6), and GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss the fourth cause of action against Corral under Rule 12(b)(6).

## III.    BACKGROUND

DDS is a California state agency that operates five developmental centers throughout the state of California including a center in Porterville.  The centers provide residential treatment for people with developmental disabilities.  Plaintiffs and five of the individual defendants were employed by DDS as law enforcement officials at the Porterville Center.

On April 16, 2013, Plaintiffs filed their initial complaint against DDS and six of its employees.[1].  (Doc. 1).  DDS received service of the complaint in a timely manner.  (Doc. 57, p. 2:3-4).  On September 23, 2013, DDS agreed to accept service on behalf of Meeker and Corral.  (Doc. 58, ¶ 2).  Plaintiffs served Meeker and Corral through DDS on November 26, 2013.  (Doc. 54).  The

---

[1] Plaintiffs Lisa Huff and Kathryn Woodside have since settled their claims and are no longer plaintiffs in this case.

remaining individual Defendants have not been served.

Plaintiff Arcure alleges that she was subject to sexual discrimination and retaliation by the individual defendants and that DDS failed to prevent or remedy the discrimination and retaliation. As relevant here, she alleges that Defendant Corral "stare[d] intently at Plaintiff's vaginal area," denied her assistance that he would provide to male co-workers, and "ma[de] it clear that he felt women should not be allowed to work in law enforcement." (Doc. 53, ¶ 14). Based on this, Arcure claims in her fourth cause of action that Corral subjected her to sexual harassment in violation of the FEHA.[2]

In the tenth cause of action, Plaintiff Cook alleges that DDS, Bradley, and Meeker acted in violation of California's WPA.

In March 2007, Cook participated in several EEOC investigations, including the sex discrimination and retaliation complaints filed by Arcure and two other female employees of DDS.

On August 11, 2008, Cook reported to outside law enforcement that Bradley was approving fraudulent overtime slips for another DDS employee. After Bradley's promotion to Chief of DDS Office of Protective Services ("OPS"), Bradley placed Cook on administrative leave and caused Cook for be investigated for conducting an unauthorized investigation – the investigation that disclosed Bradley's fraudulent activity. On September 17, 2008, Cook filed a whistleblower complaint with the State Professional Board ("SPB"), which he withdrew on March 19, 2009. In October 2008, Meeker issued to Cook a Letter of Instruction regarding Cook's report of Bradley's alleged fraudulent activity. On June 2, 2009, Cook filed another whistleblower complaint. Cook alleges that these adverse actions were taken against him in retaliation for reporting Bradley's wrongful conduct and for filing his SPB whistleblower complaints.

In October 2009 Cook applied for and was denied a promotion. In May 2010, Cook's state assigned vehicle was taken away. Cook was written up without good cause in November 2010, January 2011, and December 2013. Most recently, Cook was informed that he, as well as Defendant Fessenden, will be reassigned. Cook alleges that these adverse actions were taken against him in retaliation for his participating in the EEOC investigations as well as for reporting Bradley's wrongful

---

[2] The complaint's fourth cause of action makes allegations of sexual harassment in violation of FEHA against DDS, Bradley, Loehner, Corral, and Flores. (Doc. 53, ¶¶ 32-34). Defendants only seek to dismiss the fourth cause of action against Corral. (Docs. 72, 73).

1   conduct and filing SPB whistleblower complaints.

2   Now before the Court are (1) Defendants' motion to dismiss the individual defendants for

3   untimely service, pursuant to Fed. R. Civ. P. 4(m); (2) Defendants' motion to dismiss the tenth cause

4   of action under California's WPA for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1);

5   (3) Defendants' motion to sever the tenth cause of action under Fed. R. Civ. P. 21; (4) Defendants'

6   motion to dismiss the tenth cause of action against Defendant Meeker for failure to state a claim under

7   Fed. R. Civ. P. 12(b)(6); and (5) Defendants' motion to dismiss the fourth cause of action against

8   Defendant Corral for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## IV.   DISCUSSION

### A.   Rule 4(m) Motion

11   Defendants contend that all of the individual defendants should be dismissed because they were

12   not served within 120 days of when the complaint was filed as required by Fed. R. Civ. P. 4(m).

### 1.   Legal Standard

14   Rule 4(m) states that, "[i]f a defendant is not served within 120 days after the complaint is

15   filed," the court "must dismiss the action without prejudice against that defendant or order that service

16   be made within a specified time." *Id*.  "But if the plaintiff shows good cause for the failure, the court

17   must extend the time for service for an appropriate period." *Id*.  "At a minimum, 'good cause' means

18   excusable neglect.  A plaintiff may also be required to show the following: (a) the party to be served

19   personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c)

20   plaintiff would be severely prejudiced if his complaint were dismissed." *Boudette v. Barnette*, 923

21   F.2d 754, 756 (9th Cir. 1991).  Whether good cause for the delay has been shown is determined on a

22   case by cases basis. *Oyama v. Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).

### 2.   Analysis

24   It is undisputed that none of the individual defendants was timely served.  Defendants Meeker

25   and Corral were served over three months late while Defendants Bradley, Gardner, Loehner, and

26   Flores were never served with the complaint.

27   Plaintiffs offer no explanation for their failure to serve the individual defendants within 120

28   days of filing their complaint.  Plaintiffs merely discuss their difficulties in attempting to serve the

1   individual defendants following the September 23, 2013 settlement conference.  However, by that

2   time, the period for timely service already had ended.  Therefore, Plaintiffs fail to show "good cause"

3   for their failure to timely serve the individual defendants, and this Court has no obligation to extend the

4   time for service.  Fed. R. Civ. P. 4(m); *Boudette*, 923 F.2d at 756.

5          Defendants argue that this Court should dismiss Plaintiffs' complaint because "[n]ot only have

6   Plaintiffs shown a lack of diligence in serving the individual defendants, but they have also shown a

7   lack of diligence by not timely filing the Second Amended Complaint."  (Doc. 57, p. 5).  Defendants'

8   assessment of Plaintiffs' conduct is accurate.  However, Defendants have not shown that allowing

9   Plaintiffs to serve the unserved individual defendants would result in prejudice to those defendants, or

10  that the untimely served individual defendants suffered prejudice as a result of the delayed service.

11  Further, dismissing without prejudice Plaintiffs' complaint and allowing Plaintiffs to refile their

12  complaint would risk wasting the resources of this Court.

13         For these reasons, Defendants' motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ.

14  P. 4(m) is DENIED.

15      **B.      Rule 12(b)(1) Motion**

16         Defendants argue that Plaintiffs' tenth cause of action under California's WPA should be

17  dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

18                          **1.      Legal Standard**

19         A motion to dismiss for lack of subject matter jurisdiction determines whether the plaintiff has

20  a right to be in the particular federal court, whereas a motion to dismiss for failure to state a claim is an

21  adjudication as to whether a cognizable legal claim has been stated.  *Trustees of Screen Actors Guild–*

22  *Producers Pension & Health Plans v. NYCA*, Inc., 572 F.3d 771, 775 (9th Cir. 2009) (quoting 5B

23  Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2004)).  A federal court is a court of

24  limited jurisdiction, and may adjudicate only those cases authorized by the Constitution and by

25  Congress.  *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375, 377 (1994).  Faced with a Rule 12(b)(1)

26  motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction.

27  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  A federal court is presumed to lack

28  jurisdiction in a particular case unless the contrary affirmatively appears.  *Gen. Atomic Co. v. United*

1    *Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).

2            "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of

3    the complaint or may be made as a 'speaking motion' attacking the existence of subject matter

4    jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th

5    Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n. 4 (1947); *Mortensen v. First Fed. Sav. &*

6    *Loan Ass'n*, 549 F.2d 884, 890–892 (3rd Cir. 1977); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544

7    F.2d 1126, 1130–1131 (2nd Cir. 1976)). "In a facial attack, the challenger asserts that the allegations

8    contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for*

9    *Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004). "By contrast, in a factual attack, the

10   challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

11   jurisdiction." *Id.*

12           "If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the

13   allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the

14   existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule

15   12(b)(6) motion is made." *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *rev'd on*

16   *other grounds*, 963 F.2d 229 (9th Cir. 1992).  "The factual allegations of the complaint are presumed

17   to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject

18   matter jurisdiction." *Id.*

19                           **2.        Analysis**

20           The parties do not dispute that this Court retains original jurisdiction over the seventh cause of

21   action by Cook against DDS under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 ("Title VII").

22   DDS argues that the tenth cause of action by Cook against DDS, Meeker, and Bradley for violation of

23   California's WPA is subject to dismissal for lack of subject matter jurisdiction because it does not

24   "derive from a common nucleus of operative fact" as required for this Court to exercise supplemental

25   jurisdiction over it.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

26           Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original

27   jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

28   related to claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution."  State law claims are part of the same "case or controversy" as federal claims "when they 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (quoting *Finley v. United States*, 490 U.S. 545, 549 (1989); *Gibbs*, 383 U.S. at 725).  Nevertheless, a district court may decline to exercise supplemental jurisdiction over a claim if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).

Cook's Title VII and WPA claims, at least in part, stem from the same incidents involving the same Defendants.  See, *Nelson v. Cnty. of Sacramento*, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013) (retaining supplemental jurisdiction where "Plaintiff's state law allegations stem from the same incidents that comprise Plaintiff's remaining § 1983 claims[.]").  Specifically, as part of both his Title VII claim and his WPA claim, Cook alleges that he was wrongfully retaliated against by being denied a promotion, having his state assigned vehicle taken away, being written up without good cause on three separate occasions, and being reassigned.

Further, none of the conditions in 28 U.S.C. § 1367(c) is present to weigh against the exercise of supplemental jurisdiction.  Cook's WPA claim does not raise a novel or complex issue of state law, and Defendants' arguments to the contrary lack merit.  Cook's WPA claim does not predominate over his Title VII claim, and this Court has not dismissed Cook's Title VII claim.  Defendants make arguments as to the sufficiency of Cook's Title VII claim, but Defendants have not and do not now move for dismissal of Cook's Title VII claim.  The Ninth Circuit has noted that it upholds declinations to exercise supplemental jurisdiction under § 1367(c)(3) in cases "involv[ing] dismissals for failure to state a claim or a grant of summary judgment to the defendant on the federal claim."  *Trustees of Constr. Indus. v. Desert Valley Landscape & Maint., Inc.*, 64 F. App'x 60, 61-62 (9th Cir. 2003) (citing *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162 (9th Cir. 2002), *Ove v. Gwinn*, 264 F.3d 817, 821

7

1  (9th Cir. 2001)).  Finally, Defendants fail to show any compelling reasons for declining jurisdiction.

2  Moreover, the Supreme Court has instructed that "district courts should deal with cases

3  involving pendent claims in the manner that best serves the principles of economy, convenience,

4  fairness, and comity which underlie the pendent jurisdiction doctrine."  *City of Chicago v. Int'l Coll. of*

5  *Surgeons*, 522 U.S. 156, 172-73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357

6  (1988)); *see also*, *Gibbs*, 383 U.S. at 726 ("[J]ustification [for supplemental jurisdiction] lies in

7  considerations of judicial economy, convenience and fairness to litigants[.]").  Here, because Cook's

8  Title VII and WPA claims partially stem from the same alleged incidents of retaliation by the same

9  Defendants, judicial economy and convenience are best served by considering the claims together.

10  Also, doing so does not subject the parties to any demonstrable unfairness.

11  For these reasons, Defendants' motion to dismiss Cook's tenth cause of action for lack of

12  subject matter jurisdiction is DENIED.

13  **C.**     **Rule 21 Motion**

14  Defendants also move this Court to sever the tenth cause of action from the rest of this case

15  under Fed. R. Civ. P. 21.

16  **1.**     **Legal Standard**

17  Under Rule 21, "[t]he court may also sever any claim against a party."  Fed. R. Civ. P. 21.  The

18  Court has broad discretion in determining whether to order severance under Rule 21.  *Brunet v. United*

19  *Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) ("The trial court has broad discretion to sever

20  issues."); *Grigsby v. Kane*, 250 F.Supp.2d 453, 456 (M. D. Pa. 2003) ("[T]he court has virtually

21  unfettered discretion in determining whether or not severance is appropriate."); *see also*, 7 Charles

22  Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1689 (3d ed.

23  2001) ("Questions of severance are addressed to the broad discretion of the district court.").

24  There is no established test in the Ninth Circuit for when a district court should exercise its

25  broad discretion to sever a claim under Rule 21.  District courts in other circuits have found that claims

26  may be severable under Rule 21 if they arise from different factual situations or pose different legal

27  questions. *See*, *e.g.*, *Delce v. Amtrak and Resco Holdings, Inc.*, 180 F.R.D. 316, 319 (E. D. Tex. 1998).

28  Both parties litigated this issue using a test from New York district courts that some California district

1   courts have adopted in unpublished dispositions.  See, *Anticancer, Inc. v. Pfizer Inc*., 2012 WL

2   1019796 at *1 (S.D. Cal. Mar. 26, 2012); *S.E.C. v. Leslie, C 07-3444*, 2010 WL 2991038 at *4 (N.D.

3   Cal. July 29, 2010).  The New York district courts held that, in determining whether to sever claim

4   under Rule 21, a district court should consider the same factors as it would when evaluating whether to

5   order separate trials under Rule 42.  *Morris v. Northrop Grumman Corp*., 37 F. Supp. 2d 556, 580

6   (E.D.N.Y. 1999).  Those factors include: (1) whether the claims in a suit arise out of the same

7   transaction or occurrence, (2) whether the claims present some common questions of law or fact, (3)

8   whether settlement of the claims or judicial economy would be facilitated, (4) whether prejudice would

9   be avoided if severance were granted, and (5) whether different witnesses and documentary proof are

10  required for the separate claims.  *Id*.

11                      **2.      Analysis**

12          Defendants urge the Court to sever the WPA claim from the rest of the action because "there is

13  a significant risk of unfair prejudice to the defendants and of jury confusion."  (Doc. 69, p. 2).

14  "Fairness is a critical consideration in determining whether severance is appropriate."  *Pena v.*

15  *McArthur*, 889 F.Supp. 403, 407 (E. D. Cal. 1994) (citing *Gibbs*, 383 U.S. at 724).  However,

16  Defendants fail to demonstrate a substantial risk of prejudice resulting from not severing the WPA

17  claim.  Defendants claim, without citing any authorities, that "hearing evidence and argument by Cook

18  that he reported 'fraud' and that he was 'punished' for doing so will inflame the passions of the jury

19  and they will not fairly consider the evidence on the [] Title VII and FEHA claims."  (Doc. 69, p. 8).

20  Defendants essentially argue that the WPA claim must be severed because the evidence regarding the

21  WPA claim will be prejudicially more inflammatory than the evidence regarding the Title VII and

22  FEHA claims – including, for example, evidence as to Arcure's allegation that Defendant Loehner

23  touched her breasts and made sexually explicit comments to her.  Defendants' argument is

24  unpersuasive and unsupported.  Further, this case does not involve complex or novel legal issues.  A

25  reasonably competent jury with instruction will be capable of applying the appropriate legal standards

26  to the Title VII, FEHA, and WPA claims.

27          Moreover, as discussed above, Cook's Title VII and WPA claims stem in part from the same

28  incidents involving the same Defendants.  *Delce*, 180 F.R.D. at 319.  Specifically, as part of both his

Title VII claim and his WPA claim, Cook alleges that he was wrongfully retaliated against by being denied a promotion, having his state assigned vehicle taken away, being written up without good cause on three separate occasions, and being reassigned. Therefore, the claims arise in part from the same occurrences, involve common questions of fact, and require at least some of the same witnesses and documentary proof. *Morris*, 37 F. Supp. 2d at 580. Litigating and proving these same incidents twice in two separate cases will not serve judicial economy or "further the prompt and efficient disposition of litigation." *CVI/Beta Ventures v. Custom Optical Frames*, 896 F.Supp. 505, 506 (S. D. Md. 1995) (citing *General Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 114 (S.D.N.Y. 1970)).

Therefore, Defendants' motion to sever the tenth cause of action is DENIED.

**D.    Rule 12(b)(6) Motions**

**1.    Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

10

1    "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

2    factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

3    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

4    action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus, "bare

5    assertions...amount[ing] to nothing more than a 'formulaic recitation of the elements'...are not entitled

6    to be assumed true." *Iqbal*, 129 S. Ct. at 1951.  A court is "free to ignore legal conclusions,

7    unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of

8    factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003)

9    (internal citation omitted).   Moreover, a court "will dismiss any claim that, even when construed in the

10   light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."

11   *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a

12   complaint . . . must contain either direct or inferential allegations respecting all the material elements

13   necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car

14   Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

15        To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff

16   should be afforded leave to amend.  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection

17   Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (internal citations omitted).

18                    **2.       Analysis**

19               **a)   Tenth Cause of Action under California WPA against Meeker**

20        As discussed above, in the tenth cause of action, Cook alleges that Meeker retaliated against

21   him in violation of California's WPA.  Defendants argue that Cook fails to allege a WPA claim against

22   Meeker.  Specifically, Defendants contend that the Letter of Instruction Meeker issued to Cook does

23   not constitute "adverse employment action" as required for a violation of the WPA.  Cook asserts that

24   his pleadings are sufficient and that prior findings by an administrative law judge ["ALJ"] at the SPB

25   as to Cook's WPA claim against Meeker preclude Meeker from relitigating the issue of whether the

26   Letter of Instruction was an "adverse employment action" within meaning of the WPA.

27        Under 28 U.S.C. § 1738, federal courts are required to give the same preclusive effect to the

28   judgments and records of state courts as they would be given by the state in which they were rendered.

11

*Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985). While § 1738 does not apply to administrative decisions that have not been reviewed by a court, the Supreme Court, has "fashioned federal common-law rules of preclusion [that apply] in the absence of a governing statute." *University of Tennessee v. Elliott*, 478 U.S. 788, 794 (1986). "The rule of federal common law the Court has developed renders the factual determinations resulting from unreviewed state administrative adjudications preclusive in a subsequent judicial proceeding." *Guild Wineries & Distilleries v. Whitehall Co., Ltd*., 853 F.2d 755, 758 (9th Cir. 1988) (citing *Id*. at 3226-27; *United States v. Utah Construction & Mining Co*., 384 U.S. 394, 422 (1966)). In addition, the Ninth Circuit "ha[s] held that the federal common law rules of preclusion described in *Elliott* extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in *Utah Construction*." *Id*. at 758-59 (citing 384 U.S. at 422; *Eilrich v. Remas*, 839 F.2d 630, 632-35 & n. 2 (9th Cir. 1988); *Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir. 1986). The *Utah Construction* requirements of fairness are that: (1) the administrative agency is acting in a judicial capacity; (2) the administrative agency resolved disputed issues of fact properly before it; and (3) the parties have had an adequate opportunity to litigate. 384 U.S. at 422 (internal citations omitted).

The "threshold" task is to determine whether the proceedings before the SPB ALJ "contained the characteristics of fairness to all parties which were described by *Utah Construction* as sufficient for *res judicata* to apply through the federal common law expansion of section 1738." *Guild Wineries*, 853 F.2d at 759. Cook and Meeker litigated Cook's WPA claim against Meeker before an ALJ of the SPB in May 2011. (Doc. 79, Exh. H). The ALJ issued a Proposed Decision that was adopted by the SPB on August 9, 2011. *Id*. It is undisputed that the ALJ was acting in a judicial capacity, and that she resolved issues of fact that were properly before her. *See*, Cal. Gov. Code § 19683. Both parties were represented by counsel and participated in proceedings at the SPB. (Doc. 79, Exh. H). In fact, both parties participated in an Informal Hearing on January 19, 2010, and in a pre-hearing/settlement conference on April 7, 2011 in addition to the May 2011 evidentiary proceeding. *Id*. The parties "had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings." *Utah Construction*, 384 U.S. at 422. Therefore, the SPB proceedings meet all

1  of the requirements of fairness as sufficient for the application of *res judicata*.  *Guild Wineries*, 853

2  F.2d  at 759.

3          Having determined the "threshold" question, the Court turns to the traditional collateral

4  estoppel analysis to evaluate whether the SPB's findings should be given preclusive effect under

5  California law.[3]  "Under California law, issue preclusion applies to bar a party from relitigating an

6  issue already decided if the following requirements are met: (1) 'the issue sought to be precluded from

7  relitigation must be identical to that decided in a former proceeding'; (2) 'this issue must have been

8  actually litigated in the former proceeding'; (3) 'it must have been necessarily decided in the former

9  proceeding'; (4) 'the decision in the former proceeding must be final and on the merits'; and (5) 'the

10  party against whom preclusion is sought must be the same as, or in privity with, the party to the former

11  proceeding.'"  *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (quoting *Lucido*, 51 Cal. 3d at

12  341).

13          The WPA prohibits an employer from retaliating against an employee who discloses

14  information to a government or law enforcement agency, "where the employee has reasonable cause to

15  believe that the information discloses a violation of state or federal statute, or a violation or

16  noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(a).  To establish a

17  prima facie case under § 1102.5, "a plaintiff must show (1) she engaged in a protected activity, (2) her

18  employer subjected her to an adverse employment action, and (3) there is a causal link between the

19  two." *Patten v. Grant Joint Union High Sch. Dist*., 134 Cal.App.4th 1378, 1384 (2005).

20          Defendants argue that Cook fails to state a claim for violation of the WPA against Meeker

21  because the Letter of Instruction Meeker issued to Cook does not constitute an "adverse employment

---

22  [3] The Ninth Circuit test this Court applies aligns with the test used by the California Supreme Court:

23          The California Supreme Court has established a two-part test to evaluate the preclusive effect to accord administrative agency determinations.  The first part of the *Sims* test employs the standard the United States Supreme Court set out in *Utah Construction*: collateral estoppel should be applied "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate."  The second part entails traditional collateral estoppel criteria, barring relitigation of an issue if: (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].

28  *Eilrich*, 839 F.2d at 633 (citing *People v. Sims*, 32 Cal.3d 468 (1982) *declined to follow on other grounds*, *Lucido v. Superior Court*, 51 Cal. 3d 335, 345 (1990); *Utah Construction*, 384 U.S. at 422).

action" within the meaning of the WPA.  The issue of whether the Letter of Instruction was an "adverse employment action" within the meaning of the WPA was actually litigated and decided in the proceedings at the SPB.  (Doc. 79, Exh. H).  In fact, Cook and Meeker first litigated this issue before an ALJ at the Informal Hearing on January 19, 2010.  (Doc. 79, Exh. H, p. 3).  The ALJ issued a Notice of Findings on April 14, 2010 concluding that "[t]he LOI [] was an adverse employment action . . . Complainant should not have been subjected to a LOI for his disclosure, even if it violated internal investigatory processes.  Such action by Respondents would cause a chilling effect on employees' willingness to disclose possible wrongful government activity."  *Id*. at p. 3-4.  The parties later participated in a full evidentiary hearing before a different ALJ on May 2, 2011.  There, the parties again litigated the issue of whether the Letter of Instruction was an "adverse employment action" within the meaning of the WPA.  The ALJ who presided over the evidentiary proceeding issued a Proposed Decision on July 8, 2011, finding in relevant part, that, "[h]ere, issuing the LOI was an adverse employment action [as defined by the WPA] because it had a detrimental and substantial effect on the terms and conditions of Complainant's employment."  *Id*. at p. 9 (citing *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1049-55 (2005)).  The Proposed Decision was adopted by the SPB on August 9, 2011, and neither party has sought judicial review of it or to challenge it, so it has become final.  *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 69-70 (2000) ("[T]his court held that unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions."); *see also*, *Eilrich*, 839 F.2d at 634 (finding that the administrative agency's decision "became final with Eilrich failed to seek judicial review in the California courts.").  Therefore, the requirements for collateral estoppel are met, and the parties are precluded from relitigating the issue of whether the Letter of Instruction was an "adverse employment action" within the meaning of the WPA.

Further, the Proposed Decision of the ALJ which was adopted by the SPB adjudicated not only the issue of whether the Letter of Instruction was an "adverse employment action," but also the merits of Cook's WPA claim against Meeker.  (Doc. 79, Exh. H).  "Whenever a judgment in one action is raised as a bar to a later action under the doctrine of *res judicata*, the key issue is whether the same cause of action is involved in both suits."  *Eichman v. Fotomat Corp*., 147 Cal. App. 3d 1170, 1174

1   (Cal. Ct. App. 1983).  "California law approaches the issue by focusing on the 'primary right' at stake:

2   if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the

3   same primary right is at stake even if in the second suit the plaintiff pleads different theories of

4   recovery, seeks different forms of relief and/or adds new facts supporting recovery."  *Id*.; *Gonzales v.*

5   *California Dep't of Corr.*, 2014 WL 128603, --- F.3d ---- (9th Cir. Jan. 15, 2014) (same).  Here, both

6   the adopted decision of the SPB ALJ and the tenth cause of action in the current litigation involve the

7   same Letter of Instruction issued by the same Defendant to the same Plaintiff that allegedly abridged

8   the same primary right of the Plaintiff to be free from retaliation that violates the WPA.  (Doc. 79, Exh.

9   H, pp. 10-11) ("Complainant established by a preponderance of the evidence that he made a protected

10  disclosure of improper governmental activities to various public safety entities, was subjected to an

11  adverse employment action, and a nexus between the protected disclosure and the adverse employment

12  action.") .  Because the tenth cause of action in this case as to Meeker involves the same injury to Cook

13  with the same primary right at stead as in the SPB proceedings, Cook's WPA claim against Meeker is

14  precluded under California law.  *Eichman*, 147 Cal.App.3d at 1174.  Accordingly, Defendants' motion

15  to dismiss the tenth cause of action against Meeker is GRANTED.

16              **b)  Fourth Cause of Action under FEHA against Corral**

17          In the fourth cause of action, Arcure alleges that Corral subjected her to sexual harassment in

18  violation of FEHA.  Defendants argue that Arcure fails to state a claim against Corral for FEHA sexual

19  harassment.  Arcure argues that her allegations meet the notice pleading requirements of Fed. R. Civ.

20  P. 8, and requests leave to amend the complaint if her claim is subject to dismissal under Fed. R. Civ.

21  P. 12(b)(6).

22          California's FEHA, like Title VII, "recognize[s] two theories of liability for sexual harassment

23  claims ... quid pro quo harassment, where a term of employment is conditioned upon submission to

24  unwelcome sexual advances ... [and] hostile work environment, where the harassment is sufficiently

25  pervasive so as to alter the conditions of employment and create an abusive work environment."

26  *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (internal quotations and citations omitted).  "[H]ostile

27  work environment form of sexual harassment is actionable only when the harassing behavior is

28  *pervasive* or *severe*."  *Id.* (citing *Miller v. Department of Corrections*, 36 Cal.4th 446, 462 (2005))

1    (emphasis in the original).  "To prevail on a hostile work environment claim under California's FEHA,

2    an employee must show that the harassing conduct was 'severe enough or sufficiently pervasive to

3    alter the conditions of employment and create a work environment that qualifies as hostile or abusive

4    to employees because of their sex.'"  *Id.*  (quoting *Miller*, 36 Cal.4th at 462).  "Under California's

5    FEHA, as under the federal law's Title VII, the existence of a hostile work environment depends upon

6    'the totality of the circumstances.'"  *Id.*  "The factors that can be considered in evaluating the totality

7    of the circumstances are: (1) the nature of the unwelcome sexual acts or works (generally, physical

8    touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive

9    encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the

10   context in which the sexually harassing conduct occurred."  *Fisher v. San Pedro Peninsula Hosp.*, 214

11   Cal. App. 3d 590, 610 (Cal. Ct. App. 1989).  "There is no recovery 'for harassment that is occasional,

12   isolated, sporadic, or trivial.'"  *Hughes*, 46 Cal. 4th at 1043 (quoting *Lyle v. Warner Bros. Television

13   Prods.*, 38 Cal. 4th 264, 283 (2006)).

14          Here, Arcure alleges that Corral "stare[d] intently at Plaintiff's vaginal area," denied her

15   assistance that he would provide to male co-workers, and "ma[de] it clear that he felt women should

16   not be allowed to work in law enforcement."  (Doc. 53, ¶ 14).  Arcure makes no allegations as to the

17   frequency of these incidents or how long this conduct persisted throughout her employment with DDS.

18   *See*, *Fisher*, 214 Cal. App. 3d at 610.  Arcure also fails to allege the manner or context in which Corral

19   denied her assistance or conveyed his views on women in law enforcement to show the severity of the

20   incidents.  *Id.*  In short, Arcure fails to allege facts to support a reasonable inference that Corral's

21   conduct "was severe enough or sufficiently pervasive to alter the conditions of employment and create

22   a work environment that qualifies as hostile or abusive to employees because of their sex."  *Hughes*, 46

23   Cal. 4th at 1043 (internal quotation and citation omitted).  Accordingly, Defendants' motion to dismiss

24   Arcure's fourth cause of action against Corral is GRANTED WITH LEAVE TO AMEND.

25                                    **IV. CONCLUSION AND ORDER**

26          For the reasons discussed above, this Court:

27          1.      DENIES Defendants' motion to dismiss Plaintiffs' complaint as to the individual

28                  defendants for untimely service pursuant to Fed. R. Civ. P. 4(m);

2.    ORDERS Plaintiffs to serve Defendants Jeffrey Bradley, Scott Gardner, Douglas Loehner, and Michael Flores by no later than February 7, 2014;

3.    DENIES Defendants' motion to dismiss the tenth cause of action under California's Whistleblower Protection Act for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1);

4.    DENIES Defendants' motion to sever the tenth cause of action under California's Whistleblower Protection Act pursuant to Fed. R. Civ. P. 21;

5.    GRANTS WITH PREJUDICE Defendants' motion to dismiss the tenth cause of action under California's Whistleblower Protection Act against Defendant Deborah Meeker pursuant to Fed. R. Civ. P. 12(b)(6);

6.    DISMISSES Deborah Meeker as a defendant in this action;

7.    ORDERS the Clerk of Court to enter judgment in favor of Defendant Deborah Meeker and against Plaintiff Kevin Cook in that there is no just reason to delay to enter such judgment.  *See* F.R.Civ.P. 54(b);

8.    DISMISSES WITH LEAVE TO AMEND the fourth cause of action under California's Fair Employment and Housing Act against Defendant David Corral;

9.    GRANTS Plaintiffs ***one opportunity*** to file and serve a third amended complaint in an attempt to cure the deficiencies described herein; and

10.    ADMONISHES the parties to respect the limited resources and extraordinary caseload of this Court by meeting all deadlines set by this Court and refraining from duplicative and piecemeal filings.

Any such further amended complaint shall be filed and served within 20 days of electronic service of this order.  Defendants no later than 20 days after service of the second amended complaint shall file a response thereto.

IT IS SO ORDERED.

Dated:   __**January 30, 2014**__                   ___/s/ Lawrence J. O'Neill___
                                                                              UNITED STATES DISTRICT JUDGE