1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

YVONNE ARCURE, et al.,

        Plaintiffs,

    v.

CALIFORNIA DEPARTMENT OF
DEVELOPMENTAL SERVICES, et al.,

        Defendants.

CASE NO. 1:13-cv-00541-MJS (PC)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
CALIFORNIA DEPARTMENT OF
DEVELOPMENTAL SERVICES' MOTION
FOR SUMMARY JUDGMENT**

**(ECF No. 202)**

    The matter is before the Court on Defendant California Department of Developmental Services' motion for summary judgment. For the reasons stated below, the motion will be granted in part and denied in part.

**I.    PROCEDURAL HISTORY**

    This action began as an employment discrimination, harassment, and whistle blower protection suit by five Plaintiffs against the California Department of Developmental Services ("DDS") and several of its employees. (ECF No. 1.) The majority of Plaintiffs and Defendants since have been dismissed, along with many of the claims. (ECF Nos. 62, 112, 159, 194.) The action now proceeds on the third amended complaint brought by Plaintiff Kenneth Cook against Defendant DDS and pro se Defendant Jeffrey Bradley. (ECF No. 95.) The following four causes of action remain in

1    issue: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964 (seventh cause

2    of action), (2) retaliation in violation of the California Fair Employment and Housing Act

3    ("FEHA") (eighth cause of action), (3) failure to prevent retaliation in violation of FEHA

4    (ninth cause of action), and (4) retaliation in violation of the California Whistle Blower

5    Protection Act ("WBPA") (tenth cause of action).

6          On January 28, 2016, Defendant DDS filed a motion for summary judgment

7    and/or summary adjudication of some of Cook's retaliation claims. (ECF No. 202.) Cook

8    filed an opposition. (ECF No. 213.) DDS filed a reply. (ECF No. 219.) Defendant Bradley

9    filed no joinder in or response to the motion.

10         The matter was heard on March 11, 2016. Counsel Lawrence King appeared on

11   behalf of Cook. Deputy Attorney General Matthew T. Besmer appeared on behalf of

12   DDS. Defendant Bradley did not appear and no one appeared on his behalf. At the

13   conclusion of the hearing, the parties were invited to provide supplemental briefing. That

14   briefing having been submitted (ECF Nos. 225-233), the matter now stands ready for

15   adjudication.

16   **II.    SUMMARY JUDGMENT STANDARD**

17         Any party may move for summary judgment, and the Court shall grant summary

18   judgment if the movant shows that there is no genuine dispute as to any material fact

19   and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash.

20   Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

21   whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

22   particular parts of materials in the record, including but not limited to depositions,

23   documents, declarations, or discovery; or (2) showing that the materials cited do not

24   establish the presence or absence of a genuine dispute or that the opposing party

25   cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1).

26         Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he

27   must affirmatively demonstrate that no reasonable trier of fact could find other than for

28   him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants

do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).

## III.    FACTUAL BACKGROUND

Based on the submissions of the parties, and except as otherwise indicated, the Court finds the following facts to be undisputed.

### A.    Plaintiff Cook's Employment History

Cook completed the Ventura County Sheriff's law enforcement academy in 1986. (Defendant's Statement of Undisputed Material Facts ("DUF") 1.) He served as a deputy sheriff from July 1986 to April 1990 before leaving law enforcement to operate a pizza franchise for approximately ten years. (DUF 2-3.) Cook returned to law enforcement as a tribal police officer from approximately 2000 to 2001. (DUF 4.)

Cook joined DDS as a peace officer at the Porterville Development Center ("PDC") in 2001. (Joint Statement of Undisputed Material Facts ("JUF") 11.) DDS provides support to individuals with developmental disabilities in developmental centers throughout California. (JUF 1-2.) The centers serve as homes and treatment facilities for DDS clients. (JUF 3.) The Office of Protective Services ("OPS") is DDS's law enforcement agency. (JUF 6.)

Cook was promoted to sergeant in November 2005, and then to Supervising Special Investigator I in December 2006. (JUF 12.) As a Supervising Special Investigator I, Cook was considered a "lieutenant" within DDS. (JUF 13.) From at least December 1, 2006 to April 1, 2007, Cook was appointed Acting Commander when the Commander was away or unavailable. (Plaintiff's Statement of Undisputed Material Facts ("PUF") 5,

1    and Defendant's Reply thereto.) The Commander is the highest ranking peace officer at

2    PDC. (DUF 8.) The "Commander" title is a civil service classification of Supervising

3    Special Investigator II. (DUF 8.)

4           **B.      Acts Giving Rise to this Action[1]**

5           In April 2007, Defendant Bradley became the PDC Commander. (DUF 8.) At that

6    time, there was an ongoing internal DDS Equal Employment Opportunity ("EEO")

7    investigation into claims of sexual harassment brought by Yvonne Arcure, a former

8    Plaintiff in this action, against Douglas Loehner and David Corral, former Defendants.

9    (PUF 7, 25.) Cook was interviewed as a witness during the investigation. Other

10   investigations also were ongoing, and Cook was interviewed as a witness in at least one

11   other investigation. (PUF 9.) The parties dispute whether and to what extent Bradley was

12   aware of these investigations at the time he became Commander.

13          On August 28, 2007, Cook sent Bradley an email recommending that Corral be

14   terminated based on a DDS determination that Corral had discriminated against a

15   female employee other than Arcure, as well as other conduct. (PUF 30.) Four days later,

16   on September 4, 2007, Bradley informed PDC lieutenants and sergeants that Cook

17   would be removed from his position as Operations Lieutenant. (PUF  31.) Cook was

18   reassigned to Special Investigations Lieutenant, a position which, according to Cook,

19   involved diminished responsibility and inferior conditions of employment. (PUF 33-36.)

20   Thereafter, Cook filed a formal complaint with the United States Equal Employment

21   Opportunity Commission ("EEOC"). (PUF 11-12.) Cook's claims relating to this conduct

22   are not at issue in the instant motion for summary judgment.

23          In May 2008, PDC Scheduling Sergeant Justin Davin contacted Cook regarding

24   what he believed to be fraudulent overtime slips for Acting Sergeant Rennie Molezzo,

25   signed off on by Defendant Bradley. (DUF 11.) Cook contacted several law enforcement

26   _____

27   [1] The Court notes that DDS objects to some of these facts on grounds of relevance because they do not
     relate to the claims on which DDS seeks summary adjudication. The facts are discussed herein to provide
     the background and context for the parties' dispute and are not necessarily material. Only those facts
28   discussed below in analyzing DDS's motion are deemed material.

1   agencies regarding his concerns over this possibly fraudulent overtime scheme. (PUF
2   13.) Meanwhile, in July 2008, Bradley became the Chief of OPS. (JUF 8.) Cook
3   eventually reported his concerns of overtime fraud to the Porterville Police Department,
4   which initiated an investigation. (JUF 14.)

5      Around the middle of August 2008, the Porterville Police Department arrived at
6   PDC to investigate the allegations of fraudulent overtime. (JUF 14.) Bradley immediately
7   reported news of the investigation to Deborah Meeker, DDS Deputy Director. (DUF 16.)
8   Meeker told Bradley to stay out of the police department's investigation. (DUF 17.)  The
9   Porterville Police Department did not consider Bradley a suspect. (DUF 14.) The parties
10  dispute whether DDS considered Bradley to be a suspect at the time of the initial
11  investigation.

12     After learning of the police investigation, Meeker initiated two investigations. The
13  first investigation addressed the allegations of overtime fraud. (DUF 19.) The second
14  investigation concerned Cook. (DUF 20.) The parties dispute the purpose of this second
15  investigation. DDS claims that the investigation concerned Cook's handling of the
16  overtime allegations and possible improper disclosures of confidential information to
17  outside agencies. (DUF 21.) Cook claims that the investigation was initiated in retaliation
18  for his engaging in protected activity and due to his disability.

19     Cook was placed on administrative leave during the investigation, but retained his
20  pay and benefits. (DUF 22, 25a.) DDS claims that the decision to place Cook on leave
21  was not punitive, and was designed to protect Cook and the integrity of the investigation.
22  Cook claims that the leave decision was retaliatory and points out that neither Molezzo
23  nor Bradley were placed on leave. The parties dispute whether Bradley participated in
24  the decision to place Cook on leave. At the conclusion of the investigation, Cook was
25  returned to his same position with the same title and responsibilities, and the same pay
26  and benefits. (JUF 21.)

27     On September 12, 2008, Cook initiated two EEOC complaints. One alleged that
28  he had been retaliated against for filing his initial EEOC complaint. The other alleged

1    disability discrimination in violation of the Americans with Disabilities Act. (JUF 24, 26.)

2    In both charges, Cook claimed he was not provided with the reason he was placed on

3    leave. (JUF 24.)

4         On September 17, 2008, Cook filed a whistle blower retaliation complaint with the

5    State Personnel Board ("SPB"), claiming that being placed on paid administrative leave

6    and under investigation was retaliation for reporting alleged overtime fraud to the

7    Porterville Police Department. (JUF 26.) Cook later withdrew this complaint and filed a

8    new complaint on June 2, 2009. (JUF 27.) He did not file his whistleblower complaint

9    with his supervisor or manager before he filed it with the State Personnel Board. (DUF

10   36.)

11        After Cook's EEOC and SPB complaints were filed, Bradley imposed various

12   changes to the conditions of Cook's employment, which Cook believes were retaliatory.

13   (PUF 38.) In October 2008, Meeker issued Cook a Letter of Instruction regarding his

14   report of suspected overtime fraud to the Porterville Police Department. These specific

15   actions by Bradley and Meeker are not subjects of the instant motion for summary

16   judgment.

17        On February 25, 2009 John Sawyer, the Executive Director of PDC was

18   interviewed by Porterville radio station KTIP as part of a news broadcast about

19   allegations of drug use and overtime fraud at PDC. (JUF 46.) Sawyer did not mention

20   Cook's name during the interview. (JUF 47.) The host asked Sawyer questions which

21   derived from an anonymous letter that was sent to the radio station. (JUF 45.) The

22   relevant portion of the broadcast is as follows:

23            Radio Host: The letter stated that the lieutenant that had
24            reported about the illegal activity was placed on
             administrative leave without explanation. Sawyer was asked
25            to comment about that for news first.

26            Sawyer: I don't think that was accurate at all. Any time we put
27            anybody on administrative leave, they're given the full reason
             why they are placed on that. And the putting in – mentioning
28            the overtime fraud was not the reason that that officer – the

6

> lieutenant - was placed on administrative leave. There were other things that were also involved or that he was also involved in. And they wanted to keep him away from the facility while the investigation going on, and he was later brought back once the investigation was completed.

(JUF 48.)

In April 2009, the Porterville Police Department suspected that Bradley and an individual named Scott Gardner were committing overtime fraud. (DUF 37-38.) These suspicions arose from sources other than Cook. (DUF 37.) Around the same time, Bradley stepped down from the position of OPS Chief and requested to return to the Commander position at PDC. (DUF 40b.) Patricia Flannery, Deputy Director of Developmental Centers, placed Bradley on administrative leave on April 21, 2009, and initiated an investigation into the overtime fraud allegations. (JUF 28.) Cook claims he was forced to be a witness in this investigation. (JUF 49.) Bradley later was terminated for his conduct.[2] (JUF 29.)

Around April 2009, DDS invited applications for Bradley's replacement as OPS Chief. (JUF 34.) Flannery was responsible for selecting the new Chief. (DUF 60b.)   In May 2009, Corey Smith was named acting Chief. (JUF 31.) Smith had been a fire chief with OPS at the Sonoma Developmental Center from 1992 until 2005 and had served as Commander of the Sonoma Developmental Center from 2005 until he became the acting Chief in May 2009. (JUF 32-33.)

Cook applied for the OPS Chief position. (JUF 35.) Patricia Flannery and Mark Hutchinson reviewed the application materials submitted by Cook and fourteen other individuals. (DUF 60a.) Flannery and Hutchinson scored each applicant in four separate categories based on a review of their applications and resume materials. (DUF 61.) One applicant scored 95% and was ranked number one. Four applicants scored 90% and were ranked second. Cook scored 85% and was in the third rank, along with three other

---

[2] Bradley also was arrested in February 2010 for embezzling $121,500 in relation to the Scott Gardner overtime fraud scheme. (PUF 18.) He later was indicted on six felony counts related to his involvement in this scheme, and pled no contest to a felony conviction. (PUF 22-23.)

1  applicants. Four applicants scored below Cook, and one applicant was disqualified.

2  (DUF 65.) According to state civil service rules, only candidates in the top three ranks

3  are "reachable" or eligible to be considered for the position. (JUF 37.)

4  Cook was invited to interview with Flannery and Hutchinson. (JUF 36-37.) Both

5  Flannery and Hutchinson state that Cook did not perform well. (ECF Nos. 209-210.)

6  Following the interview, Cook emailed Flannery and Hutchison to clarify his response to

7  an interview question, stating, "I felt my answer may have been taken in a way that I

8  never intended it to be taken, that I would word things in a way that would be dishonest

9  and untruthful to protect the States' interest." (JUF 39.)

10  After interviewing the candidates, including Cook, DDS re-announced the Chief

11  position to obtain additional applicants. Smith continued to serve as acting Chief during

12  this time. (JUF 40.) Smith applied for the permanent position during the second

13  application round and ultimately was selected as the permanent Chief. (JUF 41-42.) He

14  was appointed in July 2010. (JUF 42.)

15  **C.      State Personnel Board Proceedings**

16  Cook initially filed his SPB complaint on September 17, 2008, but later withdrew

17  that complaint and filed a new complaint on June 2, 2009. (JUF 26.) On January 19,

18  2010, the State Personnel Board convened an informal hearing to investigate the June

19  2, 2009, complaint. (DUF 43.) Therein, the administrative law judge considered whether

20  the allegations contained in the complaint of being placed on leave and under

21  investigation and being issued a letter of instruction constituted adverse, retaliatory

22  employment actions. (ECF Nos. 79-4, 214-4.) The administrative law judge also

23  considered allegedly adverse retaliatory actions *not* contained in Cook's complaint, such

24  as not being asked on an as needed basis to attend morning meetings with the

25  Executive Officer, failure to be invited to meetings with special investigators, having to

26  rush to provide a doctor with materials after being told that the doctor would not be

27  available for a week, the relocation of two of his investigators, the change of

28

1   administration and personnel leaving him feeling isolated, and rumors that his credibility
2   had been damaged. (Id.)

3       In her April 14, 2010, Proposed Notice of Findings, the administrative law judge
4   found that the issuance of the Letter of Instruction constituted retaliation for Cook's
5   protected activity, but that his remaining allegations did not affect the terms and
6   conditions of his employment and therefore did not constitute adverse actions. The
7   proposed findings were adopted on April 23, 2010. (Id.)

8       On May 2, 2011, the SPB held an evidentiary hearing, at the request of DDS, to
9   determine whether Cook had any damages in connection with receiving the letter of
10  instruction and to again consider whether the letter of instruction constituted an adverse
11  action. (DUF 47; ECF Nos. 79-7, 214-5.) In her July 28, 2011 proposed decision, the ALJ
12  noted that Cook had been denied promotion since receiving the letter of instruction.
13  Although there was no evidence that the letter had been considered in the decision to
14  deny Cook's promotion, the possibility that it could be so used was sufficient to conclude
15  that the letter adversely affected the terms and conditions of Cook's employment. (ECF
16  Nos. 79-7, 214-5.) The ALJ declined to award compensatory damages as Cook had
17  offered no evidence in support of such an award. (Id.) The proposed decision was
18  adopted on August 9, 2011. (Id.; DUF 48.)

19  **IV.    DISCUSSION**

20      **A.    Whether Cook failed to exhaust his WBPA claim because he did not**
21  **first present his complaint to his supervisor or manager**

22      DDS argues that summary judgment should be granted on Cook's tenth cause of
23  action for whistleblower retaliation because Cook did not present his whistleblower
24  complaint to his employer before filing it with the State Personnel Board. According to
25  DDS, presentation to the employer is a condition precedent to filing with the SPB under
26  California Government Code Section 8547.8, and therefore a condition precedent to
27  proper exhaustion. In support, DDS relies on Atashkar v. California Horse Racing Board,
28  C069875, 2014 LEXIS 4121 (Cal. Ct. App. June 13, 2014).

Cook argues that DDS misrepresents <u>Atashkar</u> and, in any event, <u>Atashkar</u> is not citable. Cook also states that the SPB instructed him to file his complaint with the SPB and advised him that the SPB would provide a copy of the complaint to the respondents. He argues that his exhaustion was sufficient because he timely filed a complaint with the SPB, his complaint was accepted, and DDS responded.

California Government Code Section 8547.8(a) permits the filing of whistleblower complaints with the State Personnel Board:

> A state employee or applicant for state employment <u>who files a written complaint with his or her supervisor, manager, or the appointing power</u> alleging actual or attempted acts of reprisal, retaliation, threats, coercion, or similar improper acts prohibited by Section 8547.3, <u>may also file a copy of the written complaint with the State Personnel Board</u>, together with a sworn statement that the contents of the written complaint are true, or are believed by the affiant to be true, under penalty of perjury. The complaint filed with the board, shall be filed within 12 months of the most recent act of reprisal complained about.

(Emphasis added.)

Complaints for damages predicated on whistleblowing activity must be presented to the SPB prior to bringing suit: "[A]ny action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the State Personnel Board pursuant to subdivision (a), and the board has issued, or failed to issue, findings pursuant to Section 19683." Cal. Gov. Code § 8547.8(c). This requirement is jurisdictional. <u>Hood v. Hacienda La Puente Unified Sch. Dist.</u>, 65 Cal. App. 4th 435, 440 (1998).

Here, there is no question that Cook filed a complaint with the State Personnel Board and that the Board issued findings. Nor is it disputed that Cook did not first file a complaint with his supervisor or manager. The question, then, is whether the failure to file a complaint with DDS renders Cook's SPB filing insufficient to exhaust administrative remedies. For the reasons set forth below, the Court concludes that it does not.

### 1.   Applicable Statutes and Regulations

The Court begins its analysis with the plain language of the statute. Section 8547.8(c) requires that a party seeking to bring an action for damages first file "a complaint with the State Personnel Board pursuant to subdivision (a)." Subdivision (a) sets out several requirements for an adequate SPB filing: it must be accompanied by a sworn statement attesting that the matters set forth therein are true or believed to be true, it must be filed within 12 months of the most recent act of reprisal, and it must be the same complaint as that filed with the employee's supervisor or manager. The statutory language and structure *can* be read to suggest that the complaint should <u>first</u> be filed with the supervisor or manager before being filed with the SPB; however, it does not explicitly require this.[3]

Notably, regulations applicable to SPB proceedings also do not require that a whistleblower complaint first be filed with a supervisor or manager. The regulations, like the statute, require that complaints be filed within one year of the most recent act of reprisal and be accompanied by a sworn statement. Cal. Code Regs., tit. 2 § 67.2(a). They also require that the complaining party provide sufficient copies of his or her complaint to serve each entity and person alleged to have engaged in retaliatory conduct. Cal. Code Regs., tit. 2 § 67.2(a). If the Appeals Division determines that these requirements or the requirements of sections 8547-8547.12 of the Code are not met, the complaining party will be notified that the complaint has not been accepted, and the complaining party may be given leave to amend. Cal. Code Regs., tit. 2, § 67.3(a)-(b). Significantly, Cook was not given such notice in the instant case, despite his complaint not having first been presented to his supervisor or manager. In any event, the

---

[3] DDS asks the Court to take judicial notice of legislative history associated with 2001 amendments to the WBPA. (ECF No. 227.) The request is granted. The Court acknowledges that one assembly committee synopsis of the amendments reflects an understanding that the existing law required a state employee "to file an interference or retaliation complaint with his or her agency" prior to filing with the SPB. Assembly Com. on Judiciary, Synopsis of Sen. Bill 413 (2001-2002 Reg. Sess.), p.2. However, this passing statement hardly "shed[s] light on the collegial view of the Legislature as a whole." <u>Kaufman & Broad Cmtys., Inc. v. Performance Plastering, Inc.</u>, 133 Cal. App. 4th 26, 30 (Cal. Ct. App. 2005). It is not persuasive in light of the analysis set forth below.

1   regulations do not suggest that pre-filing the complaint with a supervisor or manager is a

2   jurisdictional requirement. On the contrary, the regulations appear to envision precisely

3   the opposite – copies of the complaint filed with the SPB later will be served on the entity

4   and/or person alleged to have engaged in retaliatory conduct.

5        The Court notes that these statutory and regulatory provisions differ markedly

6   from those applicable to other SPB proceedings, such as those governing complaints for

7   discrimination on the basis of mental or physical disability, wherein pre-filing of the

8   complaint with the employee's appointing authority is expressly mandatory. Such

9   complaints for discrimination may only be filed with the SPB "subsequent to lodging a

10  complaint with the appointing authority." Cal. Gov. Code § 19702(d) (emphasis added).

11  The related regulations give force to this mandate by setting forth detailed procedural

12  requirements for the internal complaint process: employees are instructed precisely on

13  where to file their complaints, Cal. Code Regs., tit. 2, § 64.2; employers are required to

14  establish a written complaint process, id. at § 64.3(a); complaints must contain specified

15  information and must be filed within a specified time, id. at § 64.3(b); and employers

16  must respond to such complaints within a specified time, id. at § 64.4. No such

17  processes are established for the internal processing of whistleblower complaints. Cal.

18  Code Regs., tit. 2 § 67.1, et seq.

19       The parties agree that the SPB's construction of the Whistleblower Protection Act

20  is entitled to substantial deference. (ECF No. 203 at 15-16; ECF No. 232 at 5-6.) Such

21  deference is an established tool of statutory interpretation under California law. See City

22  of Long Beach v. Dep't of Indus. Relations, 34 Cal. 4th 942, 956 (Cal. 2004). Here,

23  deference to the SPB requires the Court to conclude that the WBPA does not require an

24  employee to file a whistleblower complaint with his or her supervisor or manager prior to

25  filing same with the SPB.

26

27

28

1          **2.    Atashkar**

2          Despite the foregoing, a California Court of Appeal concluded in <u>Atashkar</u> that a

3    SPB complaint must first be presented to the state employee's supervisor or manager.

4    The Court examines the extent to which it is bound by <u>Atashkar</u>.

5          <u>Atashkar</u> is unpublished and, pursuant to California Rules of Court Rule 8.1115, it

6    may not be cited or relied upon by parties or the Court. Nevertheless, DDS presents

7    substantial authority purporting to require the Court to follow <u>Atashkar</u>. (ECF No. 227.)

8    This authority is not on point.

9          DDS first states that, in the absence of final authority from a state's highest court,

10   federal courts must follow the precedent of an intermediate state appellate court on

11   matters of state law absent persuasive data to the contrary. While the Court agrees

12   generally with this proposition, DDS has not presented the Court with "precedent" from

13   the California Court of Appeal. As stated, <u>Atashkar</u> is unpublished and may not be cited

14   or relied upon.

15         DDS next cites Rule 133(i)(3)(i) of the Local Rules of the United States District

16   Court for the Eastern District of California and Ninth Circuit Rule 36-3 for the proposition

17   that that the Court may consider unpublished California opinions as persuasive authority.

18   However, Local Rule 133(i)(3)(i) merely requires parties to provide the court with hard

19   copies of unpublished materials that are not otherwise easily available. Ninth Circuit Rule

20   36-3 governs citation to unpublished dispositions of the Ninth Circuit and has no bearing

21   on this action. Neither rule provides guidance in the instant case.

22         Lastly, DDS cites several federal cases for the proposition that the Court may

23   consider unpublished state court decisions. While the Court certainly may do so,

24   <u>Employers Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d 1214, 1220 n.8 (9th Cir.

25   2003), the Court is not bound by such decisions, <u>Nunez v. City of San Diego</u>, 114 F.3d

26   935, 942 n.4 (9th Cir. 1997).

27         Giving <u>Atashkar</u> the weight to which it is entitled, the Court finds it unpersuasive in

28   the circumstances presented here. The plaintiff in <u>Atashkar</u> was the chief information

1    officer of the California Horse Racing Board (CHRB). He retired on July 24, 2007, and

2    filed a SPB whistleblower complaint on June 18, 2008. The SPB dismissed the complaint

3    on the ground that Plaintiff lacked standing to file a SPB complaint because he was no

4    longer employed.[4] Plaintiff then brought suit in state court, alleging that he engaged in

5    whistleblowing activities in February 2007; suffered retaliation on May 9, 2007; made a

6    written report of retaliation to CHRB on May 14, 2007; and thereafter suffered additional

7    instances of retaliation, causing him to retire. The trial court sustained a demurrer on the

8    same ground stated by the SPB: as a former employee, plaintiff lacked standing to bring

9    suit under section 8547.8.

10         The appellate court declined to consider whether the plaintiff had standing as a

11   former employee, instead affirming the trial court's decision on other grounds.

12   Specifically, the appellate court concluded that either plaintiff's complaint was time-

13   barred or he failed to comply with section 8547.8(a) because he did not "first file a written

14   complaint with his or her supervisor or manager" before filing his complaint with the SPB.

15   The plaintiff filed only one complaint with the CHRB, on May 14, 2007. The plaintiff then

16   delayed more than 12 months, until June 18, 2008 to file with the SPB. The court

17   concluded that retaliation occurring before May 14, 2007 was time-barred because it

18   preceded the SPB complaint by more than one year. Retaliation occurring after May 14,

19   2007 was barred because it was not contained in a complaint to the CHRB.

20         There is a significant distinction between <u>Atashkar</u> and the instant case: In

21   <u>Atashkar</u>, the SPB dismissed the plaintiff's complaint for lack of jurisdiction, although for

22   reasons other than those stated by the appellate court. Here, however, the SPB

23   accepted Cook's complaint and issued findings. As stated, the SPB's determination that

24   it has jurisdiction over Cook's complaint is entitled to substantial deference. <u>See</u> <u>City of</u>

25   <u>Long Beach</u>, 34 Cal. 4th at 956.

26

27

28   _____

[4] The WBPA since has been amended to allow suits by former employees.

14

1      Additionally, the Court respectfully notes that the <u>Atashkar</u> court assumed, without

2   explanation, that the filing of a complaint with a supervisor or manager is a condition

3   precedent to filing a SPB complaint. The appellate court did not examine the statute or

4   regulations or explain how its holding followed therefrom. It cited no authority for its

5   interpretation. Thus, in light of our own analysis, this Court respectfully declines to follow

6   this unpublished case.

7      DDS's motion for summary judgment on this basis will be denied.

8      **B.      Whether Cook failed to exhaust his WBPA failure-to-promote claim**

9   **because it was not included or adjudicated in his SPB complaint**

10     DDS argues that Cook's claim for whistleblower retaliation for failure to promote

11  should be summarily adjudicated in DDS's favor because Cook did not exhaust his

12  administrative remedies as to that specific claim. The complaint in this action alleges

13  Cook was denied promotion in retaliation for filing SPB complaints. However, Cook

14  never filed an SPB complaint regarding such conduct and, indeed, did not file any SPB

15  complaint after being denied promotion. This claim was not investigated by the SPB or

16  included in the SPB's findings. Thus, according to DDS, it was not exhausted and Cook

17  may not proceed on a claim for damages.

18     Cook responds that the SPB permitted him to raise additional acts of retaliation

19  occurring subsequent to the filing of the complaint at the January 19, 2010 informal

20  hearing. Cook also raised the issue of being denied promotion at the May 2, 2011

21  evidentiary hearing, and the Board's decision addressed the possibility that Meeker's

22  Letter of Instruction affected Cook's promotional opportunities. (ECF No. 79-7 and 8-9.)

23  According to Cook, by raising the denial of promotion at the evidentiary hearing, he

24  presented it to the SPB for investigation and findings and it therefore is exhausted.

25     In reply, DDS points out that, to the extent the denial of promotion was raised and

26  addressed in the evidentiary hearing and decision, it was in the context of determining

27  whether the Letter of Instruction was used to deny Cook's promotion, and thus whether

28  Cook suffered damages in relation to the Letter. In contrast, Cook's third amended

15

complaint alleges he was denied promotion in retaliation for filing SPB complaints. Cook never amended his SPB complaint to include a claim that he was denied promotion in retaliation for filing SPB complaints, or for any other protected disclosure.

### 1. Applicable Statutes and Regulations

A SPB proceeding is initiated with the filing of a written complaint. Cal. Gov. Code § 8547.8(a). The SPB must initiate a hearing or investigation of the complaint. Cal. Gov. Code § 19683(a). Following this investigation or hearing, the executive officer makes findings that are reported to the employee and the appropriate supervisor or manager. Id. Thus, the purpose of the investigatory hearing held pursuant to section 19683 is to investigate the complaint and to make findings thereon.

If the executive officer finds that whistleblower retaliation occurred, the employer "may request a hearing before the State Personnel Board regarding the findings of the executive officer." Cal. Gov. Code § 19683(b). In this sense, this second, evidentiary hearing functions as a sort of appeal of the investigatory findings rendered pursuant to section 19683(a). After this evidentiary hearing (or after the investigatory hearing, if no evidentiary hearing is requested), the SPB may order appropriate relief. Cal. Gov. Code § 19683(c).

### 2. Analysis

Cook's written SPB complaint did not allege that he was denied promotion in retaliation for filing SPB complaints. Cook did not raise his failure-to-promote claim at the investigatory hearing either. Nor could he have, as Cook was not denied promotion until after his complaint was filed and after the investigatory hearing was held.

Following the investigatory hearing and before the evidentiary hearing, the parties participated in a pre-hearing conference before an ALJ. (ECF No. 79-7 at 5.) This conference also took place before Cook was denied promotion. The ALJ ordered that the evidentiary hearing would address whether the Letter of Instruction issued to Cook constituted retaliation and, if so, whether there was evidence to support compensatory

1  damages. (Id. at 5-6.) The "findings of fact, analysis, and conclusions in the evidentiary

2  hearing" were expressly limited to these two issues. (Id. at 6.)

3       Thereafter, the evidentiary hearing was held, and the denial of Cook's promotion

4  was discussed there. The ALJ found that Cook applied for a promotion to Chief after

5  receiving the Letter of Instruction and did not get the promotion. It is plain that,

6  consistent with the pre-hearing order, the promotion issue was addressed only in the

7  limited context of whether the Letter of Instruction was an adverse employment action

8  and whether Cook suffered any resulting damages. The issue of whether the denial of

9  promotion itself constituted an adverse, retaliatory employment action was neither

10  presented nor considered.[5]

11       Accordingly, Cook failed to exhaust this claim. Partial summary judgment will be

12  granted in favor of DDS.

13       **C.     Whether there is a triable issue of fact as to causation on Cook's**

14  **failure-to-promote claim**

15       Cook brings his failure to promote claim under the WBPA, FEHA, and Title VII. As

16  stated above, Cook failed to exhaust his WBPA failure-to-promote claim, and thus this

17  claim will be summarily adjudicated in DDS's favor. In light of this ruling, the Court will

18  not address DDS's causation arguments with regard to Cook's WBPA failure-to-promote

19  claim.

20       However, DDS also seeks summary adjudication of the FEHA and Title VII failure-

21  to-promote claims on the ground that Cook cannot prove causation. Cook contends that

22  there is sufficient evidence for a jury to find causation. These arguments are discussed

23  in greater detail below.

24

25  _____

26  [5] The parties submitted supplemental briefing on the extent to which an SPB complainant may amend his
   or her complaint during the evidentiary hearing and the authority of the ALJ to adjudicate additional claims

27  not contained in the written complaint. (ECF Nos. 225, 230.) However, the Court concludes that these
   arguments ultimately are not pertinent. Even if it is possible to amend a complaint or introduce new issues

28  at the evidentiary hearing stage, nothing before the Court suggests that such an amendment occurred in
   this case.

1        **1.    Title VII Legal Standard**

2        Under Title VII, an employer may not discriminate against any individual because

3  "he has opposed any practice made an unlawful employment practice by this

4  subchapter, or because he has . . . participated in any manner in an investigation,

5  proceeding, or hearing under this subchapter." 42 U.S.C § 2000e-3(a). To establish a

6  prima facie case for retaliation under Title VII, a plaintiff must show (1) the employee

7  engaged in a protected activity, (2) the employer subjected the employee to an adverse

8  action, and (3) a causal link exists between the protected activity and the employer's

9  action. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124 (9th Cir. 2004).

10       "[T]he requisite degree of proof necessary to establish a prima facie case for Title

11 VII . . . claims on summary judgment is minimal." Coghlan v. Am. Seafoods Co. LLC.,

12 413 F.3d 1090, 1094 (9th Cir. 2005) (citation and internal quotation marks omitted).

13 "Causation sufficient to establish the third element of the prima facie case may be

14 inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff

15 engaged in protected activities and the proximity in time between the protected action

16 and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371,

17 1376 (9th Cir. 1987). For timing to create an inference of retaliation, the adverse action

18 must occur "fairly soon" after the employee's protected expression. Villiarimo v. Aloha

19 Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (holding eighteen months was too

20 long to support an inference of causation).

21       If a prima facie retaliation claim is established, the "burden shifting" scheme

22 described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. Stegall v.

23 Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003), as amended (Jan. 6, 2004).[6]

24 _____

25 [6] There is some question whether the McDonnell Douglas test survives the Supreme Court's recent decision in University of Texas Southwest Medical Center v. Nassar, 133 S. Ct. 2517, 2533 (2013). See

26 Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 252 (4th Cir. 2015) (collecting cases and concluding that Nassar does not alter the McDonnell Douglas burden shifting test). The Ninth Circuit has implied, in other contexts, that the burden shifting test remains applicable. T.B. ex rel. Brenneise v. San Diego Unified

27 Sch. Dist., 806 F.3d 451, 473 (9th Cir. 2015), cert. denied sub nom. San Diego Unified Sch. Dist. v. T.B., 136 S. Ct. 1679 (2016). Absent case law to the contrary, the Court will continue to apply McDonnell

28 Douglas in this case.

1    Under this scheme, if the plaintiff establishes a prima facie case of retaliation, the burden

2    shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action.

3    Porter v. Cal. Dep't of Corr., 419 F.3d 885, 894 (9th Cir. 2005). Once the defendant has

4    presented such a reason, the burden shifts back to plaintiff to provide evidence that the

5    defendant's reason is "merely a pretext for a retaliatory motive" and that the harm would

6    not have occurred in the absence of the plaintiff's protected activity. Id.; Univ. of Tex. SW

7    Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). The plaintiff ultimately must show that

8    his protected activity was a but-for cause of the adverse employment action. Nassar, 133

9    S. Ct. at 2533.

10       A plaintiff may show that an employer's proffered reason is pretext either by

11   "directly persuading the court that a [retaliatory] reason more likely motivated the

12   employer or indirectly by showing that the employer's proffered explanation is unworthy

13   of credence." Stegall, 350 F.3d at 1066 (internal quotation marks omitted) (quoting

14   Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). "When the plaintiff

15   offers direct evidence of discriminatory motive, a triable issue as to the actual motivation

16   of the employer is created even if the evidence is not substantial." Id. (citation omitted).

17   In contrast, when direct evidence is unavailable and the plaintiff proffers only

18   circumstantial evidence that the employer's motives were different from its stated

19   motives, "specific" and "substantial" evidence of pretext is required to survive summary

20   judgment. Id. (citation omitted).

21               **2.    FEHA Legal Standard**

22       FEHA retaliation claims also are subject to the three-stage burden shifting test set

23   forth in McDonnell Douglas. See Yanowitz v. L'Oreal USA, Inc., 116 P.3d 1123, 1142

24   (Cal. 2005). Plaintiff bears the initial burden to set forth a prima facie case of retaliation

25   by showing that he engaged in a protected activity and suffered an adverse employment

26   action, and that there is a causal link between the protected activity and the employer's

27   action. Id. If Plaintiff makes out a prima facie case, the burden shifts to the employer to

28   provide evidence of a legitimate, non-discriminatory reason for the adverse employment

action. Id. If the employer provides such evidence, the burden shifts back to the employee to prove intentional retaliation. Id. However, unlike Title VII retaliation claims, which require a showing of but-for causation, the causal link under FEHA may be established by showing that the protected activity was a substantial motivating reason for the adverse employment action. Harris v. City of Santa Monica, 56 Cal. 4th 203, 232 (Cal. 2013).

### 3.   Parties' Arguments

Cook's Title VII and FEHA failure-to-promote claims are based on the allegation that he was denied promotion because he filed complaints with the EEOC and participated in internal EEO investigations. DDS argues that Cook cannot show that his protected activity was either a but-for cause of, or a substantial motivating factor in, DDS's promotion decision.

According to DDS, Cook was not the most qualified applicant for the position. Based on his background and experience he was ranked in the third tier of applicants along with three other individuals. He had significantly less experience than other candidates, including the person ultimately hired for the position: He had nine years of continuous law enforcement experience, with four additional years of experience more than twenty years earlier. Two of those years were spent as a sergeant and three as a Supervising Special Investigator I. He spent no more than four months serving as acting Commander. In contrast, the individual ranked number one during the first round of interviews had seven years of experience serving in a higher classification than the position of OPS Chief, as well as two years of experience as a Supervising Special Investigator II, almost eight years of experience as a senior investigator, one year of experience as a Special Investigator I, and six years of experience as a city police officer. Smith, who ultimately was selected for the position, served in management level positions with DDS for 17 years. He spent four years as a Supervising Special Investigator II and five years as the acting and permanent Commander of the Sonoma

1   Developmental Center. He also had nearly twelve years of experience as the fire chief of

2   the Sonoma Developmental Center.

3       DDS also asserts that Flannery and Hutchinson felt Cook performed poorly during

4   his interview. DDS contends that the follow-up email sent by Cook to Flannery and

5   Hutchinson demonstrates that he did not perform well at the interview. Finally, DDS

6   asserts that Flannery, who ultimately was responsible for the hiring decision, had no

7   knowledge of Cook's complaints to the EEOC or participation in EEO investigations.

8       Cook responds that there is sufficient evidence for a jury to find causation. First,

9   he suggests that earlier acts of retaliation denied Cook experience that would have

10  made him competitive for the position. Second, he argues that the selection process was

11  tainted. He points out that investigation into his EEOC and WBPA complaints was

12  ongoing at the time he was being considered for the position. DDS generally was aware

13  of Cook's complaints to the EEOC and WBPA, and Hutchinson was involved in the

14  EEOC investigation. Furthermore, a jury could conclude that Hutchinson told Flannery

15  about Cook's EEOC complaints or otherwise influenced Flannery's decision in more

16  subtle ways, despite Flannery's declaration to the contrary. Cook also argues that the

17  aforementioned conduct could lead a jury to conclude that the reasons offered by DDS

18  for not promoting Cook are pretexts for retaliation.

19                    **4.    Analysis**

20      The Court concludes that Cook has not presented sufficient evidence to create a

21  disputed issue of fact regarding causation under Title VII or FEHA. The Court is

22  cognizant that the threshold to establish a prima facie case on summary judgment is

23  minimal, particularly for FEHA claims. However, here, Cook cannot rely on either the

24  decision maker's actual knowledge of his protected activity or temporal proximity to

25  support his claims. DDS has submitted a declaration from Flannery stating that she was

26  unaware of Cook's EEOC complaints or his participation in EEO investigations at the

27  time of his application. (ECF No. 209 at 6.) Cook provides no evidence to counter this

28  sworn testimony. Although, Cook speculates that Hutchinson may have told Flannery

1    about Cook's EEO activities, such speculation is insufficient to raise a genuine issue of

2    material fact.[7] R.W. Beck & Assocs. v. City & Borough of Sitka, 27 F.3d 1475, 1480 n.4

3    (9th Cir. 1994) ("Arguments based on conjecture or speculation are insufficient to raise a

4    genuine issue of material fact . . . . If the evidence is merely colorable, or is not

5    significantly probative, summary judgment may be granted." (internal quotation marks

6    omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986))).

7        The Court notes that Cook had an opportunity to develop evidence in this regard

8    but did not do so. As DDS pointed out during the hearing on this motion, Cook

9    participated in Flannery's deposition but did not elicit any testimony to suggest she was

10   aware of his EEO activities. And, although Hutchinson was aware of Cook's EEOC

11   complaints, the evidence submitted demonstrates only that Hutchinson communicated

12   with the EEOC through a single letter on November 16, 2007, two years before Cook's

13   interview. Hutchinson was not the ultimate decision maker in Cook's promotion decision,

14   and there is no evidence to suggest that his temporally distant involvement in Cook's

15   EEOC complaint influenced the selection process.

16       Furthermore, even assuming Cook's evidence is sufficient to support a prima

17   facie case of discrimination, DDS has proffered extensive evidence of a legitimate, non-

18   retaliatory reason for the decision not to promote Cook. That evidence shows that Cook

19   was not the most qualified applicant for the position. It is beyond dispute that several

20   applicants who were ranked higher than Cook possessed more experience, both in

21   terms of years of experience and in rank. Cook does not dispute this evidence. Nor does

22   he offer evidence to show that he was equally qualified or more qualified than the other

23   applicants, or otherwise was unfairly ranked. Indeed, at the hearing on this motion, Cook

24   stated only that he would have been similarly qualified to these applicants had he not

_____

26   [7] Cook's citation to Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000), is inapposite. There,
     the court concluded that an employer was not entitled to judgment as a matter of law even though the
27   formal decision maker held no discriminatory animus, in light of evidence that the actual decision maker
     did hold such animus. Id. at 152-53. Here, there is no evidence that Hutchinson was the actual decision
28   maker and, in any event, as stated below, Plaintiff has failed to offer evidence to rebut DDS's proffered
     non-retaliatory reason for the promotion decision.

1  been denied opportunities and experience through other, former acts of retaliation. This,

2  however, does not show that he was denied promotion due to intentional retaliation on

3  the part of Flannery, or even Hutchinson. At most, this argument is relevant to whether

4  Cook suffered damages as a result of the prior acts of retaliation that denied him

5  opportunities and experience.

6     Cook's contention that DDS's proffered reasons are pretext is unsupported by

7  facts and appears based on pure speculation. Cook does not support his assertion that

8  the selection process was tainted or that a systemic pattern of retaliation influenced

9  Flannery's decision. His conclusory claims are insufficient to show that DDS's proffered

10  explanation is unworthy of credence, and they are not supported by the "specific" and

11  "substantial" evidence required to survive summary judgment. Stegall, 350 F.3d at 1066.

12     Accordingly, Cook's Title VII and FEHA failure-to-promote claims will be

13  summarily adjudicated in favor of DDS.

14     **D.   Other Specific Acts**

15     Cook alleges numerous acts of retaliation by DDS and Bradley. DDS argues that

16  claims based on the following acts must be dismissed because they do not rise to the

17  level of an adverse employment action and, in any event, Cook cannot prove causation:

18  (1) John Sawyer's interview on KTIP radio, (2) subjecting Cook to an internal affairs

19  investigation, (3) placing Cook on paid administrative leave,[8] and (4) ordering Cook to be

20  a witness in an internal investigation of Defendant Bradley.

21     Cook responds that these acts should be viewed cumulatively and alongside

22  other acts of retaliation to determine whether they constitute adverse employment action.

23  According to Cook, the Court need not evaluate each alleged act of retaliation

24  individually, and Cook has sufficiently alleged adverse action under the cumulative

25  standard. Cook does not address DDS's causation argument.

26  _____

[8] Following the investigatory hearing, the SPB found that DDS's acts of subjecting Cook to an internal
27  affairs investigation and placing him on administrative leave did not constitute adverse employment
actions. However, these findings are not binding in this proceeding. State Bd. of Chiropractic Exam'rs v.
28  Superior Court, 45 Cal. 4th 963, 976-78 (Cal. 2009); Wabakken v. Cal. Dep't of Corr. & Rehab., 801 F.3d
1143, 1148-49 (9th Cir. 2015).

1    DDS responds that, even if these acts cumulatively constitute an adverse

2    employment action, the allegations should nonetheless be dismissed on causation

3    grounds.

4        At the hearing on DDS's motion, Cook's counsel stated that he does not intend to

5    pursue a claim regarding Cook having been a witness in DDS's investigation of Bradley.

6    As this claim has been abandoned, it will not be discussed further. Summary judgment

7    will be granted in favor of DDS on this claim. The remaining acts are discussed below.

8                    **1.    Adverse Employment Action**

9                       **a.    Legal Standards**

10       Under FEHA, courts "need not and do not decide whether each alleged retaliatory

11   act constitutes an adverse employment action in and of itself." Yanowitz, 36 Cal. 4th at

12   1055. Instead, "it is appropriate to consider plaintiff's allegations collectively under a

13   totality-of-the circumstances approach." Id. at 1052 n.11.

14       Although not addressed by the California Supreme Court, California courts of

15   appeal also have adopted this collective approach to determining adverse employment

16   actions for the purposes of the WBPA. Patten v. Grant Joint Union High Sch. Dist., 134

17   Cal. App. 4th 1378, 1390 (Cal. Ct. App. 2005); Arbuckle v. Cal. Bd. of Chiropractic

18   Exam'rs, No. C066238, 2013 WL 3467054, at *17 (Cal. Ct. App. July 10, 2013).

19       Under Title VII, an adverse employment action is one that could dissuade a

20   reasonable worker from making or supporting a charge of discrimination. Burlington N. &

21   Santa Fe Ry. v. White, 548 U.S 53, 56-57, 68 (2006). There is some uncertainty as to

22   whether such acts may be viewed collectively, or must be viewed individually. Certainly,

23   individual review is the norm, see id. at 71-73; Blount v. Morgan Stanley Smith Barney

24   LLC, 982 F. Supp. 2d 1077, 1084 (N.D. Cal. 2013), aff'd, 624 F. App'x 965 (9th Cir.

25   2015) ("Federal district courts have not used this collective approach when evaluating

26   adverse employment actions in Title VII discrimination cases."), although some circuits

27   have expressly endorsed the collective view, Wideman v. Wal–Mart Stores, Inc., 141

28   F.3d 1453, 1456 (11th Cir.1998), cited with approval on other grounds in Ray v.

1 | Henderson, 217 F.3d 1234, 1242 (9th Cir. 2000). In this circuit, adverse actions may be
2 | viewed collectively where a plaintiff has alleged that a pattern of retaliation-based
3 | harassment has created a hostile work environment. See Ray v. Henderson, 217 F.3d
4 | 1234, 1245-46; Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) ("A
5 | hostile work environment claim is composed of a series of separate acts that collectively
6 | constitute one unlawful employment practice.").

7 | Cook argues that the acts taken against him should be viewed collectively to
8 | determine whether they constitute adverse action. DDS provides no argument or legal
9 | authority to the contrary. Indeed, DDS nearly concedes this point in its reply, stating that
10 | it will "respond to Cook's argument based on [Cook's proffered] legal theory" that the
11 | acts should be viewed collectively. (ECF No. 219 at 14.) As DDS is the movant on this
12 | motion, it is DDS's burden to show that it is entitled to judgment as a matter of law. Fed.
13 | R. Civ. P. 56(a). Since DDS has provided no legal authority for its position, DDS has not
14 | met this burden. In light of the uncertainty in the case law and DDS's failure to provide
15 | support for its position, the Court will review the alleged acts collectively to determine
16 | whether they constitute adverse action under Title VII.

17 | **b.    Analysis**

18 | As explained above, the Court must consider whether all of the acts alleged by
19 | the plaintiff collectively constitute adverse employment action. DDS argues that the three
20 | contested acts, i.e., John Sawyer's interview on KTIP radio, subjecting Cook to an
21 | internal affairs investigation, and placing Cook on paid administrative leave, do not
22 | collectively constitute adverse action because they are not linked to any of the other
23 | allegedly adverse acts and there is no evidence that they are part of a systemic pattern
24 | of retaliation. DDS cites no authority that imposes such a test on the collective review of
25 | contested employment actions. Indeed, the Court concludes that such an individualized
26 | inquiry is contrary to, and would defeat the purpose of, the collective approach.
27 | Yanowitz, 36 Cal. 4th at 1055 ("[I]t is appropriate to consider plaintiff's allegations
28 | collectively under a totality-of-the circumstances approach."); Wideman, 141 F.3d at

1   1456 ("We need not and do not decide whether anything less than the totality of the

2   alleged reprisals would be sufficient.").

3       In this action, Cook has alleged numerous acts of retaliation in addition to those at

4   issue in this motion for summary judgment. The Court concludes that, when viewed

5   collectively, the alleged acts are sufficient to constitute adverse employment action.

6   Summary judgment on this basis will be denied.

7           **2.     Causation**

8               **a.     Legal Standards**

9       As stated, FEHA claims require a showing that the protected activity was a

10  substantial motivating reason for the adverse employment action. Harris, 56 Cal. 4th at

11  232. Title VII requires a showing that the protected activity was the but-for cause of the

12  adverse employment action. Nassar, 133 S. Ct. at 2533.

13      California Government Code section 8547.8(e) sets forth the following burden

14  shifting test regarding causation on a whistleblower retaliation claim: the plaintiff bears

15  the initial burden of showing by a preponderance of the evidence that his protected

16  activity was a contributing factor in the alleged retaliation. The burden then shifts to the

17  defendant to show by clear and convincing evidence that "the alleged action would have

18  occurred for legitimate, independent reasons," even if the employee had not engaged in

19  protected conduct.

20              **b.     Analysis**

21                   **i.     John Sawyer Radio Interview**[9]

22      DDS argues that it is entitled to judgment as a matter of law on this claim

23  because Cook has no evidence of Sawyer's retaliatory animus and Sawyer merely

24  answered questions posed to him by an interviewer.

25      In the interview, Sawyer stated that Cook (although not identified by name) was

26  placed on administrative leave for reasons other than his having reported overtime fraud.

27  _____

28  [9] DDS seeks summary adjudication of this claim under the WBPA only. It is unclear to the Court whether
    Cook also wishes to attribute this alleged retaliation to his EEOC complaint or other EEO activities. In any
    event, such potential claims are not addressed here as they were not included in DDS's motion.

1   Cook's protected activity clearly was a contributing factor in the alleged retaliation. Cal.

2   Gov. Code § 8547.8(e). DDS thus is required to show by clear and convincing evidence

3   that "the alleged action would have occurred for legitimate, independent reasons," even

4   if Cook had not engaged in protected conduct. Id. DDS does not, and cannot plausibly

5   contend that Sawyer's statements would have been made even if Cook had not engaged

6   in protected conduct, as Cook would not have been placed on leave had he not reported

7   suspected overtime fraud. And, although DDS contends that Sawyer did not have a

8   retaliatory animus, DDS proffers no legitimate, non-retaliatory reasons for making such

9   statements. This is of particular concern where, as here, the statements implied,

10  somewhat incorrectly, that Cook was placed on leave for reasons other than his

11  whistleblowing activity.

12       Accordingly, summary judgment on this ground will be denied.

13                  ii.      Internal Affairs Investigation and Administrative Leave

14       DDS states that Cook cannot prove that protected activity was the cause behind

15  the internal affairs investigation or his placement on administrative leave. According to

16  DDS, these actions were not taken to intentionally retaliate against Cook but for the

17  legitimate reasons of understanding how the overtime allegations were handled and

18  protecting the integrity of the investigation and the parties involved. According to DDS,

19  Cook cannot rebut these reasons.

20       Cook appears to concede that his activities protected by Title VII and FEHA were

21  not a factor in his being placed on leave and under investigation. In his opposition, he

22  states that he was "put on administrative leave and subjected to an internal investigation,

23  because he reported the overtime scam to the Porterville Police." (ECF No. 213 at 20.)

24       The Court concludes that summary judgment must be granted in favor of DDS on

25  Cook's claims that he was placed under investigation and on administrative leave in

26  violation of Title VII and FEHA. Cook presents no argument in this regard.  Additionally,

27  there is no evidence before the Court that Meeker – the person responsible for placing

28  Cook under investigation and on leave – knew of his activities protected under Title VII

1   and FEHA. The Court finds no basis to conclude that Cook's Title VII or FEHA activities

2   were a substantial motivating factor in, let alone the but-for cause of, Cook being placed

3   on leave and under investigation.

4   However, the Court will deny summary judgment with regard to Cook's WBPA

5   claim. DDS cannot plausibly argue that Cook's protected WBPA activities were not a

6   contributing factor in his being placed on leave and under investigation. To the contrary,

7   these activities quite clearly precipitated Meeker's decision. DDS argues that these

8   actions were not retaliatory, and instead were taken for the legitimate reasons of

9   investigating Cook's handling of the overtime allegations and ensuring the integrity of the

10  overtime investigation. These reasons are insufficient to warrant summary judgment. A

11  reasonable juror could conclude that placing an employee under investigation for the

12  manner in which he engaged in whistleblowing activity constitutes retaliation.

13  Additionally, placing Cook on leave while those involved in the alleged overtime scheme

14  continued to work undermines DDS's claim that such leave was necessary to protect the

15  investigation.[10] DDS has not presented clear and convincing evidence that Cook would

16  have been placed on leave and under investigation for legitimate, independent reasons.

17       **E.    Claims Against the Attorney General's Office**

18  According to DDS, Cook raised during discovery a claim that the Attorney

19  General's Office retaliated against him by failing to investigate his whistleblower claims

20  or take his case. DDS argues that this claim should be summarily adjudicated in its favor

21  for various reasons.

22  Cook responds that he has not alleged a claim on this basis.

23  The Court finds no such claim in Cook's third amended complaint. (ECF No. 9.)

24  The Attorney General is not named as a Defendant and there is no basis for imputing

25

26  ───────────────

[10] DDS states that "the fact that Bradley was placed on administrative leave demonstrates the consistency
27  of DDS's practice and confirms that Cook was not singled out." (ECF No. 203 at 24.) However, Bradley
was placed on administrative leave in 2009 in relation to a second round of allegations regarding overtime
fraud. It does not appear that Bradley was placed on leave during the investigation of Cook's allegations of
28  overtime fraud.

1   the Attorney General's conduct to DDS. The Court will not adjudicate a claim that is not

2   before it. DDS's motion for summary adjudication of this claim will be denied.

3           **F.    Whether Defendant Bradley should be dismissed**

4        According to DDS, Cook claims that Defendant Bradley placed him on

5   administrative leave and under investigation in retaliation for reporting overtime fraud.

6   DDS states that these are the only claims that subject Bradley to individual liability in this

7   action.[11] DDS contends that Bradley did not make or participate in the decisions at issue

8   and thus should be dismissed.

9        Cook points out that Bradley, who is proceeding pro se, has not filed a motion for

10  summary judgment on his own behalf. Moreover, according to Cook, the evidence

11  presented precludes summary judgment in favor of Bradley. Specifically, Bradley

12  provided Meeker with the information that led Meeker to place Cook on leave and under

13  investigation. He was present at PDC on the date Cook was placed on leave and

14  "presumably" assigned officers to escort Cook off the premises, thereby "maximizing"

15  Cook's humiliation. Additionally, the letter informing Cook that he was being placed on

16  leave identified Bradley as a person to contact if Cook needed to return to PDC for any

17  reason. Finally, Cook claims that Bradley lied during the investigation of Cook's EEOC

18  complaints, and therefore a jury could conclude that Bradley is lying about not being

19  involved in the decisions to place Cook on leave and under investigation.

20       DDS responds that it has standing to seek Bradley's dismissal because DDS has

21  an interest in proceeding without Bradley as a co-defendant and avoiding claims for

22  indemnification of Bradley for any judgment against him. DDS maintains that Cook has

23  not presented evidence to show that Bradley was involved in the contested decisions,

24  whether directly or indirectly.

25

26  _____

27  [11] Although the complaint contains additional allegations against Defendant Bradley, those allegations preceded Cook's whistleblowing activity and are alleged to have flowed from Plaintiff's conduct that is protected by Title VII and FEHA. Neither Title VII nor FEHA provides for individual liability on the part of a

28  supervisor or manager under these circumstances.

1   The Court will address the claim. Regardless of whether DDS has standing to

2   seek Bradley's dismissal from this action, the Court has the power to grant summary

3   judgment sua sponte, provided the parties have sufficient notice and an opportunity to

4   respond. Fed. R. Civ. P. 56(f). Here, the parties certainly had notice of the issue by way

5   of DDS's motion, and the issue has been thoroughly briefed.

6   DDS's claims that Bradley did not participate in the decisions to place Cook on

7   leave and under investigation are supported by Bradley's deposition testimony and

8   Meeker's declaration. Meeker specifically states that she, and not Bradley, initiated the

9   investigation and made the decision to place Cook on leave. She did so without

10  Bradley's input. Bradley testified similarly in his deposition that Meeker made these

11  decisions without Bradley's input.

12  Cook offers no evidence to the contrary. His speculation that Bradley may

13  have had influence over these decisions because he reported the police investigation to

14  Meeker is precisely that -- speculation. It is not sufficient to create a genuine issue of

15  material fact. R.W. Beck & Assocs., 27 F.3d at 1480 n.4. Bradley's involvement in

16  carrying out Meeker's directives also is not indicative of his involvement as a decision

17  maker. And, to the extent Cook has evidence that Bradley lied during the EEOC

18  investigation, that evidence could be relevant to impeach Bradley's credibility, generally.

19  However, it does not constitute evidence that Bradley participated in the decisions to

20  place Cook on leave or under investigation. Nor is it evidence that Meeker's declaration,

21  presented by DDS in support of its motion, is false.

22  Based on the foregoing, Cook has failed to present evidence to support his claims

23  against Bradley. These claims will be summarily adjudicated in favor of Bradley and

24  Bradley will be dismissed from this action.

25  **V.    CONCLUSION**

26  Based on the foregoing, DDS's motion for summary judgment and /or summary

27  adjudication is HEREBY GRANTED IN PART AND DENIED IN PART. The following

28  claims are summarily adjudicated in favor of DDS:

1.  Cook's Title VII, FEHA, and WBPA failure-to-promote claims;

2.  Cook's claim that he was forced to be a witness in DDS's investigation of Bradley;

3.  Cook's claim that he was placed under investigation and on administrative leave in violation of Title VII and FEHA; and

4.  All claims against Defendant Bradley

In light of this ruling, Defendant Bradley is HEREBY DISMISSED from this action. In all other respects, the motion is denied.

IT IS SO ORDERED.

Dated:   July 19, 2016                            /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE

31